IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANGELA Y.,[1]                              3:19-cv-02044-BR

          Plaintiff,                       OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

**LISA R. J. PORTER**
Johnston Porter Law Office, PC
5200 S.W. Meadows Rd
Suite 150
Lake Oswego, OR 97035
(503) 245-6309

          Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

_____

     [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**MARTHA A. BODEN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

Attorneys for Defendant


**BROWN, Senior Judge.**

Plaintiff Angela Y. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

Plaintiff filed applications for DIB and SSI on December 12, 2013, alleging a disability onset date of August 12, 2010. Tr. 1392.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a

---

[1] Citations to the official transcript of record filed by the Commissioner on May 18, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

hearing on May 4, 2016.  Tr. 44-81.  At the hearing Plaintiff amended her alleged onset date to October 9, 2012.  Plaintiff was represented by an attorney at the hearing, and Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on June 2, 2016, in which she found Plaintiff was not disabled, and, therefore, Plaintiff was not entitled to benefits.  Plaintiff appealed the matter to the United States District Court.  On January 21, 2019, Chief District Judge Marco A. Hernandez issued an Opinion and Order in which he concluded the ALJ did not err when she partially rejected Plaintiff's testimony, but she erred when she partially rejected the opinion of Keli Dean, Psy.D., examining psychologist.  Tr. 1459, 1464, 1471.  Chief Judge Hernandez remanded the matter to the ALJ for further evaluation of Dr. Dean's opinion in light of other evidence in the record. Tr. 1474.

On February 19, 2019, the Appeals Council entered an order in which it remanded the matter to the ALJ for "further proceedings consistent with" Chief Judge Hernandez's Opinion and Order.  Tr. 1482.

An Administrative Law Judge (ALJ) held a hearing on remand on July 23, 2019.  Tr. 1401-23.  At the hearing Plaintiff was represented by an attorney and a VE testified.  On September 27, 2019, the ALJ issued a decision on remand in which she found

Plaintiff is not disabled and, therefore, Plaintiff is not entitled to benefits.  Tr. 1376-96.

## BACKGROUND

Plaintiff was born on April 12, 1975; was 41 years old at the time of the first hearing; and was 44 years old at the time of the second hearing.  Tr. 186.  Plaintiff has a GED.  Tr. 50. Plaintiff has past relevant work experience as a pharmacy technician.  Tr. 1394.

Plaintiff alleges disability due to bipolar disorder, agoraphobia, depression, chronic pain, fibromyalgia, migraines, arthritis, asthma, allergies, irritable bowel syndrome (IBS), and "neck/spine/skull pain."  Tr. 343.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 1385-92.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even

when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648

6 - OPINION AND ORDER

F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after her October 9, 2012, amended alleged onset date.  Tr. 1379.

At Step Two the ALJ found Plaintiff has the severe impairments of bipolar disorder, fibromyalgia, migraines, IBS, obesity, and asthma.  Tr. 1379.  The ALJ found Plaintiff's impairments of left-shoulder pain, "left knee symptoms," polydipsia, dizziness, gastroesophageal reflux disease, trigger

8 - OPINION AND ORDER

finger, benign paroxysmal positional vertigo, hypertension, lumbago, patellofemoral disorder, pronation of the foot, flat foot, gestational diabetes, agoraphobia, pain disorder, anxiety, depression, and "alcohol abuse in sustained remission" are not severe.  Tr. 1380.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments during the relevant period do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 21.  The ALJ found Plaintiff has the RFC to perform light work except:

> [Plaintiff] can frequently push and pull with bilateral upper extremities; can occasionally climb ramps and stairs; should not climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch and crawl; should avoid concentrated exposure to extreme cold, vibration, and hazards (such as unprotected heights and exposed moving mechanical parts); should avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation; should not be required to work in bright sunlight; can understand and remember simple, routine instructions; has sufficient concentration, persistence and pace to complete simple, routine tasks for a normal workday and workweek with normal breaks; should have only occasional contact with the general public and coworkers; should not be required to work around crowds; should have no over the shoulder supervision; and should be in a workplace with few changes to the work setting.

Tr. 1382.

At Step Four the ALJ concluded Plaintiff cannot perform her past relevant work.  Tr. 1394.

At Step Five the ALJ found Plaintiff can perform jobs that

9 - OPINION AND ORDER

exist in significant numbers in the national economy.  Tr. 1394.
Accordingly, the ALJ found Plaintiff is not disabled.


## **DISCUSSION**

Plaintiff contends the ALJ erred when she (1) partially
rejected Plaintiff's testimony; (2) partially rejected the
opinion of Keli Dean, Psy.D., examining psychologist;
(3) partially rejected the statement of Jeremy Adversalo, L.P.C.,
Plaintiff's counselor; and (4) failed to include all of
Plaintiff's limitations in her assessment of Plaintiff's RFC.

## I.   **The ALJ did not err when she partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when she partially rejected
Plaintiff's testimony.  The ALJ engages in a two-step analysis to
determine whether a claimant's testimony regarding subjective
pain or symptoms is credible.

"First, the ALJ must determine whether the claimant has
presented objective medical evidence of an underlying impairment
'which could reasonably be expected to produce the pain or other
symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th
Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36
(9th Cir. 2007)).  The claimant need not show her "impairment
could reasonably be expected to cause the severity of the symptom
she has alleged; she need only show that it could reasonably have
caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014

10 - OPINION AND ORDER

(quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).
A claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."
*Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis
and there is not any affirmative evidence of malingering, "the
ALJ can reject the claimant's testimony about the severity of her
symptoms only by offering specific, clear and convincing reasons
for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins
v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same).
General assertions that the claimant's testimony is not credible
are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir.
2007). The ALJ must identify "what testimony is not credible and
what evidence undermines the claimant's complaints." *Id*.
(quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

At the first hearing Plaintiff testified she has pain in her
neck, shoulders, back, hips, knees, ankles, fingers, and toes.
Tr. 66. Plaintiff stated she has migraines four or six times per
month, which cause her to feel nauseous or to throw up. When she
has a migraine, she "put[s] cold rags on [her] face and l[ies] in
a dark room." Tr. 68. Plaintiff testified she is unable to work
because she is "unreliable" and "never know[s] from day to day if
[she is] going to be able to walk from the bed to the bathroom,
if [she can] get down the stairs or back up them, if [she is]

going to wake up with a migraine, or end up developing a headache or migraine throughout the days it goes on [sic]." Tr. 52. Plaintiff cancels commitments frequently because she feels sick. Tr. 53.

At the time of the first hearing Plaintiff had three children (ages 3, 6, and 21), and she identified herself as a "stay-at-home mom." Tr. 49, 60. Plaintiff testified her husband worked outside of the home Monday through Friday from 8:00 a.m. to 4:30 p.m., but "he'[d] been having to take off some weekdays" to take Plaintiff to appointments. Plaintiff testified "the household is [her] chore[, but her] husband takes on the burden." Tr. 61. Plaintiff noted "around the house on a really, really great day, I'm able to assist my kids in picking out their clothes and getting my son to the bus stop and making sure he gets on the bus," she can get an entire load of laundry washed and dried, she can empty half of the dishwasher, she can make quick food for her children, and she tries to vacuum. Tr. 61-62. Plaintiff stated she goes grocery shopping alone once a month and with her husband three times a month. Plaintiff stated she made attempts to earn income babysitting for a friend and as a fitness coach for Beach Body Fitness, but she was largely unsuccessful. Tr. 51-52.

At the second hearing Plaintiff testified she has been having migraines more frequently than at the time of the first

hearing.  Plaintiff's chronic pain "has progressed and other
issues have progressed" since the first hearing.  For example,
Plaintiff "wake[s] up almost every day with a headache," it is
"very difficult for [her] to leave the house to do any activities
at all," and when she "ha[s] attempted to try and do anything
[it] pretty much laid [her] in bed for a day or two after from
pain."  Tr. 1411-12.  Plaintiff testified she has "a lot more
anxiety issues," and her "memory recollection . . . has gotten
more difficult."  Tr. 1410, 1412.  Plaintiff stated she tried
trigger-point injections and a year of Botox to treat her
headaches, but they did not significantly improve her pain.

Although the ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms," Plaintiff's statements "concerning the intensity,
persistence and limiting effects of these symptoms are not
entirely consistent with the medical evidence and other evidence
in the record."  Tr. 1384.  The ALJ noted Plaintiff sought
mental-health treatment in December 2013 when she was feeling
overwhelmed by situational factors such as the fact that her
husband was arrested for shoplifting and incarcerated for 60 days
in September 2013.  Plaintiff engaged in an intensive mental-
health program that included treatment five or six days a week.
On December 4, 2013, Plaintiff reported she was "loving the
[therapy] groups" and that her "mood went from a 3 [that] morning

13 - OPINION AND ORDER

to a 6-1/2 [that] afternoon due to being around others, being out of my stressful home." Tr. 915. The ALJ noted the record reflects Plaintiff's "active participation and gradual improvement in symptoms with a month of intensive treatment." Tr. 1385. After Plaintiff finished her intensive mental-health therapy, she followed up with mental-health providers at Luke-Dorf Mental Health Clinic. At her initial appointment Kessa Williams, L.P.C., noted Plaintiff was "experiencing depression and anxiety, which is affecting her ability to function effectively at home" and assessed her with a GAF of 60.[2] Throughout 2014 Plaintiff reported "situational stressors" arising from the fact that her husband was working six days per week and she had to drive him to work "late which interrupt[ed] [her childrens'] sleep" because her husband did not have a driver's license. Tr. 1346. Specifically, her husband "ha[d] to be picked up at 11:30PM which mean[t] that none of them, except maybe the infant, [got] to sleep until 1:00 am. Everyone wakes up at 7 AM or so. She reports feeling chronically tired and worn

---

[2] The fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability (*see Diagnostic and Statistical Manual of Mental Disorders V* (DSM-V) 16 (5th ed. 2013)). In the fourth edition, however, a GAF of 51-60 indicated moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).

out." Tr. 1344.  In addition, Plaintiff forgot to refill her
medications because she was sleep deprived, and she did not
"feel[] good after not taking Effexor for a couple of days."
Tr. 1346.  After her husband began driving himself to work,
however, Plaintiff reported her functioning improved.  For
example, Plaintiff reported she "shower[s] daily, get[s] dressed,
take[s] care of the kids, [herself].  She still prefers to not go
to stores, but can do it if she has to.  She has also started a
co op preschool with other mom's and children as her sons are 2.5
and 5.5 years old."  Tr. 1335.  Plaintiff reported "her mood is
average and . . . she's able to have fun sometimes.  She still
has some anxiety, but it's not 'horrible'.  It 'pops up' when she
has to go to the store or other places by herself or with just
the kids, but can go with her husband without intense anxiety."
*Id.*

Plaintiff's mental-health therapist noted Plaintiff's
mood was euthymic at most of Plaintiff's appointments in 2015
and 2016.  Tr. 1295-1342.  Plaintiff frequently reported she
was "doing well" and that her mood was "okay" or "good."
Tr. 1295-1300, 1312-17, 1320-21, 1324-35, 1341-42.  At
appointments during which Plaintiff reported increased mental-
health symptoms, she also reported situational stressors such as
stress from "trying to maintain her busy schedule," the holidays,
a miscarriage, and the loss of her grandmother.  Tr. 1295, 1299,

15 - OPINION AND ORDER

1301-05, 1319, 1322-23, 1326.

The Court concludes on this record that the ALJ did not err when she partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms during the relevant period because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II.  The ALJ did not err when she partially rejected Dr. Dean's opinion.

Plaintiff asserts the ALJ erred when she partially rejected the opinion of Dr. Dean, examining psychologist.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On November 14, 2013, Dr. Dean conducted a psychodiagnostic evaluation of Plaintiff.  Dr. Dean reviewed only Plaintiff's records from Wildwood Psychiatric Clinic dated March 8, 2012, through November 27, 2012, before conducting the psychiatric

16 - OPINION AND ORDER

evaluation because "no other records were available at the time of the evaluation." Tr. 893. Plaintiff told Dr. Dean that she had been "involved in therapy off and on throughout her adult life," but she was "not currently involved in therapy because she [had] not figured it out with the Oregon Health Plan." Tr. 894. Plaintiff reported she has suffered from depression "since childhood," has "had a history of hypomania" beginning in middle school, and at age 25 she began experiencing anxiety that made it difficult for her to "talk[] in groups." Tr. 894-95. Plaintiff stated she has three children ages 19, 4, and 16 months and that her "anxiety became more profound" after she had her four-year-old. Tr. 895. Plaintiff reported she has "a hard time leaving her home," has difficulty going grocery shopping, and has panic attacks "set off by being in the dark." Tr. 895. Plaintiff also noted she has had "long-term problems with managing household chores because of her physical problems and she likes things 'really organized.' If she cannot organize things the way she feels they should be then she doesn't even try." Tr. 895. Plaintiff "does not cook because no one wants her to cook and she takes too long because she is too careful. She . . . is dangerous in the kitchen because she always cuts  herself or burns herself." Tr. 895.

Dr. Dean administered the Montreal Cognitive Assessment (MoCA). The MoCA "was designed as a rapid screening instrument

for mental status and mild cognitive dysfunction.  It assesses
. . . attention and concentration, executive functions, memory,
language, visuoconstructional skills, conceptual thinking,
calculations, and orientation.  The total possible score is 30
points; a score of 26 or above is considered normal."  Tr. 896.
Plaintiff received a score of 21, "which suggests the potential
for cognitive impairment."  Tr. 896.  On the short-term memory-
recall task Plaintiff recalled three of five words after "they
were immediately presented" and four of five words "after they
were presented a second time."  Tr. 896.  Plaintiff, however,
recalled only two words after a five-minute delay.  Dr. Dean
tested Plaintiff's attention, concentration, and working memory
using a "sustained attention task, . . . a serial subtraction
task, and digits forward and backward."  Tr. 896.  Plaintiff did
not have any "problems on the tapping test.  She could recall
five digits forward and correctly sequenced three digits
backwards.  [Plaintiff, however,] was only able to perform one
calculation on the serial subtraction test."  Tr. 896.  Dr. Dean
assessed Plaintiff's visuospatial abilities with a clock-drawing
task and a three-dimensional cube copy.  Plaintiff "maintained
the gestalt when she copied the cube, but she forgot one line.
She had correct contour and placement of hands, but did not
include all of the numbers on the clock drawing task."  Tr. 897.
Dr. Dean assessed Plaintiff's language skills using a "three-item

confrontation naming task . . . [and ] repetition of two
syntactically correct sentences." Tr. 897.  Plaintiff correctly
named the three animals and made one error when repeating back
the sentences.  Dr. Dean found Plaintiff had mild limitations in
social functioning and moderate restrictions in her activities of
daily living.  Dr. Dean declined to assess Plaintiff's
limitations in concentration, persistence, and pace noting her
"MoCA score fell in the impaired range[, but] more in depth
testing is recommended to better understand CPP."  Tr. 900.
Dr. Dean stated Plaintiff suffered four or more episodes of
decompensation in the 12 months before the assessment.  Tr. 901.
Dr. Dean found Plaintiff was not significantly limited in her
ability to carry out "very short and simple instructions," to
"sustain an ordinary routine without special supervision," to
"make simple work related decisions," to ask "simple questions or
request assistance," to get along with coworkers and peers
"without distracting them or exhibiting behavioral extremes," to
"maintain socially appropriate behavior and adhere to basic
standards of neatness and cleanliness," to respond "appropriately
to changes in the work setting," and to "be aware of normal
hazards and take appropriate precautions."  Tr. 903.  Dr. Dean
found Plaintiff was moderately limited in her ability to
"maintain attention and concentration for extended periods"; to
"perform activities within a schedule, maintain regular

19 - OPINION AND ORDER

attendance, and be punctual within customary tolerances"; to "work in coordination with or proximity to others without being distracted by them"; to "interact appropriately with the general public"; to "accept instructions and respond appropriately to criticism from supervisors"; and to "set realistic goals or make plans independently of others."  Tr. 903.  Dr. Dean found Plaintiff was markedly limited in her ability to "travel in unfamiliar places or use public transportation" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 903.

The ALJ gave partial weight to Dr. Dean's opinion. Specifically, the ALJ gave great weight to Dr. Dean's opinion that Plaintiff "had impaired concentration, persistence, and pace, and would have moderate limitations in interacting with the general public, accepting instructions and responding appropriately to criticism from supervisors, and setting realistic goals or making plans independently from others." Tr. 1392.  The ALJ, however, gave "little weight" to the remainder of Dr. Dean's opinion.  The ALJ noted Dr. Dean examined Plaintiff only one time and did not have access to all of Plaintiff's records.  In addition, at the time that Dr. Dean conducted her evaluation Plaintiff was dealing with situational

20 - OPINION AND ORDER

stressors that included her husband's incarceration and parenting
two children under the age of four alone.   The ALJ noted
Dr. Dean's opinion was inconsistent with the record, which
reflects Plaintiff's symptoms improved when she received
consistent mental-health therapy and medication.   For example,
after attending mental-health therapy, Plaintiff reported in
December 2013 that her goals were "to take [her] medications on
time.   Start [her] journal, put up the Christmas tree and go to
church."   Tr. 924.   Plaintiff stated she met all of her goals.
Plaintiff also consistently reported progress in group therapy.

     In addition, the ALJ noted Dr. Dean's opinion was
contradicted by the opinion of Kimberly Goodale, Psy.D.,
examining psychologist.   Dr. Goodale administered a
psychodiagnostic evaluation of Plaintiff in February 2012, at
which time Plaintiff was pregnant with her third child.
Dr. Goodale noted Plaintiff

> appears to be able to complete many activities of
> daily living including care of her 2-1/2-year-old
> son, completing house chores, and transporting her
> husband to and from work.  She does tend to
> socially isolate spending most of her time with
> immediate family members.  While she describes
> being overwhelmed and taking her toddler out to
> public, she has made recent attempts to do so once
> a week to a play park.  Although this is stressful
> to her, she was unable to articulate any
> physiologic symptoms of anxiety or panic attacks
> during these incidences.

Tr. 624.   Dr. Goodale stated:

> Cognitively, there is no evidence for impairment.

21 - OPINION AND ORDER

> Her largest barriers at this point in time in
> regards to return to work appear to be tying into
> her mood disturbances.  She has evidenced the
> capacity to engage in long-term employment working
> as a pharmacy technician for over 10 years up
> until 10/2010 and the birth of her son.  She
> describes undergoing a significant postpartum
> depression after the birth of her son and
> continues to experience large fluctuations in mood
> during her current pregnancy.  It may be once her
> body's hormone levels return to normal after
> pregnancy that she finds her mood better managed
> in the future with her medication regimen, as it
> appears this has been the case in the past.

Tr. 624.

The Court concludes on this record that the ALJ did not err when she partially rejected Dr. Dean's opinion because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

### III. The ALJ did not err when she partially rejected the statement of Jeremy Adversalo, L.P.C., Plaintiff's counselor.

Plaintiff asserts the ALJ erred when she rejected the statement of Jeremy Adversalo, L.P.C., Plaintiff's counselor.

Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 416.902.  Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors.  SSR 06-03p, at *2.  Factors the ALJ should consider when determining the weight to give an opinion from

22 - OPINION AND ORDER

those "important" sources include the length of time the source
has known the claimant and the number of times and frequency that
the source has seen the claimant, the consistency of the source's
opinion with other evidence in the record, the relevance of the
source's opinion, the quality of the source's explanation of his
opinion, and the source's training and expertise.  SSR 06-03p, at
*4.  On the basis of the particular facts and the above factors,
the ALJ may assign a not-acceptable medical source either greater
or lesser weight than that of an acceptable medical source.  SSR
06-03p, at *5-6.  The ALJ, however, must explain the weight
assigned to such sources to the extent that a claimant or
subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,
at *6.

On April 7, 2016, L.P.C. Adversalo completed a Mental
Impairment Questionnaire in which he noted he had treated
Plaintiff since December 2013.  L.P.C. Adversalo stated Plaintiff
did not have any limitations in her ability to understand and to
remember simple instructions and to get along with coworkers; she
was mildly limited in her ability to remember procedures and to
maintain regular attendance; and she was moderately limited in
her ability to maintain attention "for 2 hour segments," to
complete an eight-hour workday without "additional rest periods,"
and to "perform work without getting distracted."  Tr. 1196.
L.P.C. Adversalo noted Plaintiff had a "residual disease process

that would result in marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate" and she had a "[c]urrent history of 1 or more years inability to function outside a highly supportive living arrangement with indication of continued need for such an arrangement."  Tr. 1196.  Finally, L.P.C. Adversalo stated Plaintiff's impairments or treatment would cause her to be absent from work "about twice a month." Tr. 1196.

The ALJ gave "little weight" to L.P.C. Adversalo's opinion. The ALJ noted although Plaintiff had been treated by others at the clinic at which L.P.C. Adversalo worked, L.P.C. Adversalo had only treated Plaintiff since September 2015, and, therefore, he had not been a long-term treatment provider for Plaintiff at the time he completed the questionnaire.  The ALJ also noted L.P.C. Adversalo's finding that Plaintiff could not function outside of a highly supportive living arrangement was "internally inconsistent" with his "reports of none, mild, and moderate limitations."  Tr. 1389.  In addition, the record does not reflect Plaintiff was able to operate only in a highly supportive living arrangement.  Although the Ninth Circuit has not addressed the issue, courts that have evaluated the term "highly supportive living arrangement" have held it includes places such as "a hospital, halfway house, board and care facility, or other

24 - OPINION AND ORDER

environment that provides similar structure." *Chamberlain v. Berryhill*, No. 7:16-CV-337-RJ, 2018 WL 845544, at *8 (E.D.N.C. Feb. 13, 2018).  *See also Morris v. Astrue*, No. 11-cv-248-JL, 2012 WL 4499348 (D.N.H. Sept. 28, 2012)(finding a highly structured setting existed in a prison environment); *Handy v. Astrue*, No. TMD 11-1317, 2012 WL 1605651 (D. Md. May 4, 2012) (finding a highly supportive living arrangement at a mental-health facility where the plaintiff lived and received treatment and medication).  In contrast, courts have found a highly supportive living arrangement does not exist when a plaintiff lives in a group home and has his meals prepared and his medication distributed, but he is "free to come and go as he please[s]," *Miller v. Comm'r of Soc. Sec.,* No. 3:12 CV 3064, 2014 WL 916945 (N.D. Ohio Mar. 10, 2014), or when a plaintiff's girlfriend assists him with household chores and sometimes helps him to manage finances but the plaintiff is otherwise able to care for his personal needs on a regular basis.  *Santiago v. Colvin*, No. 12 Civ. 7052(GBD)(FM), 2014 WL 718424 (S.D.N.Y. Feb. 25, 2014).  *See also Gonsalves v. Astrue*, No. 09-181-BW, 2010 WL 1935753, at *4 (D. Me. May 10, 2010)("[A] 'highly structured living arrangement' is something other than living with one's parents while taking care of most of one's personal needs and making substantial contributions to the household without a high degree of supervision; it refers to shelters or

group homes, inpatient psychiatric treatment, or an inability to live on one's own."); *Chamberlain*, 2018 WL 845544, at *9 ("living with a roommate who does the majority of the housework, cooking, and driving is enough to qualify as a 'highly supportive living arrangement.'").  Plaintiff here, unlike the plaintiffs in *Morris* and *Handy,* was able to care for three young children, provide assistance to her parents, transport family members, and grocery shop.

The ALJ also pointed out that the record indicated Plaintiff's symptoms improved and remained stable when she was on medication and attending therapy.

The Court, therefore, concludes on this record that the ALJ did not err when she partially rejected L.P.C. Adversalo's opinion because the ALJ gave reasons germane to L.P.C. Adversalo supported by substantial evidence in the record for doing so.

**V.   The ALJ did not fail to include all of Plaintiff's limitations in her assessment of Plaintiff's RFC.**

Plaintiff asserts the ALJ erred when she failed to include in her assessment of Plaintiff's RFC all of Plaintiff's limitations set out in Plaintiff's testimony and in the opinions of L.P.C. Adversalo and Dr. Dean.  The Court, however, has concluded the ALJ did not err when she partially rejected Plaintiff's testimony and the opinions of L.P.C. Adversalo and Dr. Dean.  Accordingly, the Court also concludes the ALJ did not err when she did not include all of the limitations set out in

26 – OPINION AND ORDER

Plaintiff's testimony and in the opinions of L.P.C. Adversalo and Dr. Dean in her assessment of Plaintiff's RFC.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 5th day of January, 2021.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge


27 - OPINION AND ORDER